IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiffs,<br><br>vs.<br><br>JOSUE QUIROGA, AND HAMOLEQUET ADI QUIROGA,<br><br>                Defendants. | 8:15CR217<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the court on the defendants' objections, Filing No. 54 and Filing No. 56, to the Findings and Recommendation ("F&R") of the United States magistrate judge, Filing No. 52, on their motions to suppress all evidence obtained subsequent to a traffic stop and search conducted by the Nebraska State Patrol ("NSP") on February 8, 2015, Filing No. 25. The defendants are charged with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance, in violation of Title 21 U.S.C. § 846, and defendant Josue Quiroga is charged with knowingly carrying and using firearms during and in relation to or knowingly possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

    I.    FACTS

      After a hearing on October 16, 2015, the magistrate judge recommended denial of the motions. *See* Filing No. 52, Order at 11. The magistrate judge found defendant Hamolequet Adi Quiroga, a passenger in the vehicle, lacked standing to object to the search of the Ford pickup. *Id.* at 10. He found NSP Trooper Ryan Henrichs had probable cause for the initial traffic stop, in that he had observed and radar clocked a speeding

violation. *Id.* at 7. He made the factual findings that the traffic stop ended at 2:41 a.m., a call for a canine occurred at 2:57 a.m., and the canine arrived at 3:36 a.m. The magistrate judge also found that the period of detention after the traffic stop ended was not *de minimis*, but found that the continued detention of the defendants after the initial stop ended was justified by a reasonable, articulable suspicion of criminal activity. *Id.* at 8. The officer's suspicion was supported by the officer's awareness of the following:

> 1) three different names given for the driver, two from him and one from the passenger, and the inability through record checks to verify any one of the names provided; 2) his initial observation of an ammo can in the backseat when he approached the vehicle; 3) a strong smell of oranges (a masking device) when he approached the vehicle; 4) the driver's unusual demeanor while in the patrol car; 5) the discrepancy between the driver and the passenger as to the driver's residence; 6) the discrepancy between the driver and the passenger as to their relationship, sister versus cousin; 7) the discrepancy between the driver and the passenger regarding where they were coming from, Omaha or Des Moines; 8) the discrepancy between the driver and the passenger as to the length of their trip; 9) the absence of the registered owner of the vehicle; 10) the observation of three cell phones in the vehicle when Trooper Henrichs approached the vehicle; and 11) when asked about the discrepancies the driver stated the passenger was probably scared because [Josue Quiroga] was illegal.

*Id.* at 8-9.

Further, the magistrate judge stated that the dog sniff of the vehicle was not a search for which the officer needed either consent or justifiable suspicion. *Id.* at 10. He found the NSP service canine's alert to the odor of drugs in the vehicle provided probable cause for the subsequent search. *Id.* at 11. In so finding, the magistrate judge implicitly found that the dog sniff was reliable, in reliance on the testimony of NSP Trooper Dain Hicks and service dog training records. *Id.* at 5; [Filing No. 40](#), Exhibit List, Hearing Exhibit ("Hr'g Ex.") 101.

Defendant Josue Quiroga objects to the magistrate judge's findings that: (1) the trooper had reasonable suspicion to detain Josue Quiroga beyond the conclusion of the

2

traffic stop; (2) the post-stop detention was of a reasonable duration; (3) the dog was reliable and alerted three times; and (4) there was probable cause to search the vehicle. Defendant Hamolequet Quiroga objects to the magistrate judge's findings that: (1) she does not have standing to object to the search of the truck; (2) the trooper had a reasonable articulable suspicion of criminal activity sufficient to continue her detention after the conclusion of the traffic stop; and (3) there was probable cause for the stop and the search.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo determination of those portions of the F&R to which the defendants object. *United States v. Lothridge*, 324 F. 3d 599, 600-01 (8th Cir. 2003). The court has reviewed the entire record including the transcript of the suppression hearing, and the exhibits, including audio and video recordings. *See* Filing No. 42, Transcript ("Tr."); Filing No. 40, Exhibit List, Hr'g Exs. 1, 2, and 101. The court accepts the facts set out in the F&R and they need not be fully repeated here, except to the extent necessary to this court's findings.

As relevant herein, the evidence adduced at the hearing shows that in the early morning hours of February 8, 2015, NSP Trooper Ryan Henrichs observed a vehicle exceeding the posted speed limit of 55 miles per hour in a construction zone. Filing No. 42, Tr. at 7. Trooper Henrichs pulled the vehicle over. *Id.* at 10. Trooper Henrichs's patrol car was equipped with an audio-video camera and the audio-video of the encounter is depicted on Hearing Exhibit 1. *See id.* at 11; Hr'g Ex.1. The court has reviewed the video and finds that it corroborates the magistrate judge's recitation of the facts. *Id.*

The video shows that that the reason for the stop was that the defendant had been driving above the posted speed limit of 55 miles per hour in a construction zone. Hr'g Ex. 1. The officer told the vehicle's occupants that the vehicle had been clocked at 68 miles per hour. *Id.* The officer asked for identification and registration for the vehicle and the driver

produced a registration of the pickup in the name of Maria Montanez, but had no identification or driver's license. *Id.;* [Filing No. 42](#)., Tr. at 13-14, 19.

After conversing with both defendants, Trooper Henrichs determined, via a computer records check, that defendant Hamolequet Quiroga's driver's license was valid, the vehicle was registered, insured and had not been reported stolen. *Id.* at 27. He handed the vehicle paperwork and a warning citation to Josue Quiroga and informed him the stop was over at 2:41:57 p.m. *Id.* at 30, 86; *see id.*, Hr'g Ex. 1.

Trooper Henrichs asked Josue Quiroga to stay in the patrol car while the officer spoke to the passenger. *Id.*, Tr. at 30. He returned Ms. Quiroga's driver's license and informed her the stop was over at 2:43 a.m. *Id.* He again conversed with her about the nature of the defendants' trip, and Ms. Quiroga's answers were not only inconsistent with those of the driver, but were at odds with her own earlier statements. *Id.* at 32. While the trooper was speaking to the passenger, the driver attempted to exit the patrol car at approximately 2:47 a. m. and was ordered to return to the cruiser. *Id.* at 33. Trooper Henrichs testified that at that time neither defendant was free to leave. *Id.*

Trooper Henrichs asked for, and was refused, consent to search the vehicle. *Id.* at 38. Josue Quiroga declined to agree to wait for a canine to arrive to sniff the car and Trooper Henrichs called for a canine unit to come to the scene at 2:57 a.m. *Id.* at 40, 86; Hr'g Ex. 1. The dog and its handler, Trooper Dain Hicks, arrived approximately 39 minutes later. *Id.* Trooper Henrichs searched the vehicle and found five guns, an ammunition can full of ammunition, a tactical vest, a black ski mask, brass knuckles, two bags containing marijuana, a safe behind the driver's seat containing a handgun, cocaine, methamphetamine, what the officers believed to be ecstasy, and a bundle of U.S. currency. *Id.* at 46-48.

Trooper Dain Hicks also testified at the hearing. He testified that he has been a canine ("K-9") handler since 2013. *Id.* at 90. He obtained the dog, J.D., a Belgian Malinois, in 2014. *Id.* at 100. Trooper Hicks testified as to the training and certification of the police dog service team. *Id.* at 91-99. At the time of the traffic stop in February 2015, Trooper Hicks and J.D. were certified as a police dog team under NSP guidelines. *Id.* at 100, 111; *id.*, Hr'g Ex. 101 at 306-310.

Trooper Hicks explained the details of the dog's training and discussed the dog's training and performance records as reflected in Hr'g Ex. 21. *Id.* at 115-116. The record shows that although the dog received numerous "unskilled" or "needs improvement" notations during his training, he was nonetheless certified under NSP standards on January 27, 2015. Hr'g Ex. 101 at 310; [Filing No. 42](Filing No. 42), Tr. at 111-12, 115. Trooper Hicks testified that the NSP uses a six-point grading system for certification, from one for "superior" to six for "unskilled." *Id.* at 114. A grade of four is "suitable" and five means "needs improvement." *Id.* at 115. To be certified by the NSP, the dog must average better than a four. *Id.* at 118.

Trooper Hicks testified that alerting is "a spontaneous — natural, spontaneous change in behavior to a trained odor. And the indication is just that he's — he's going into a trained behavior on one of those trained odors." *Id.* at 120. He testified that the dog's alerting behavior was to go "nasal and — nasally, and he'll work back and forth into the odor . . . working his way into the odor, trying to pinpoint." *Id.* at 118-19. He stated the dog's indication behavior is to sit, stand, or lie down, depending on the environment. *Id.* at 119. Based on his training and experience with the dog, Trooper Hicks testified that the dog alerted and indicated that narcotics were present in the truck. *Id.* at 133. The video shows the dog first stood and then began to lie down at the passenger's side rear bumper of the pickup truck. Hr'g Ex. 1 at 3:39-40.

5

Trooper Hicks also testified that the NSP trains its own dogs and stated that the officer who does the certification is trained under International Congress standards. *Id.* at 114. There was no evidence, expert or otherwise, that the training and/or certification of police service dogs by the NSP is deficient or unreliable.

II. LAW

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures,'" *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), and requires that both be reasonable. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). The temporary detention of an individual during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, is a "seizure" of a "person" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809 (1996). When a police officer makes a traffic stop, the passenger in the car, in addition to the driver, is seized because a reasonable passenger would not believe himself free to terminate the encounter and leave. *Brendlin v. California*, 551 U.S. 249, 259 (2007). A passenger may bring a Fourth Amendment challenge to the legality of a traffic stop. *Id.* (noting that "'If either the stopping of the car, the length of the passenger's detention thereafter, or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit'" (footnote omitted) (quoting 6 W. LaFave, Search and Seizure § 11.3(e), pp. 194, 195, and n. 277 (4th ed. 2004 and Supp. 2007)).

Determination of the reasonableness of a seizure is a question of law. *See Muehler v. Mena*, 544 U.S. 93, 98 n. 1 (2005). The reasonableness of a seizure depends on a

balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968).

A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation and the temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. *Id.* The Supreme Court has made it plain "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.*; *see Muehler,* 544 U.S. at 100–101.

As the Supreme Court recently explained, the Fourth Amendment limits the permissible length of a traffic stop. *Rodriguez v. United States*, ––– U.S. –––, ––––, 135 S. Ct. 1609, 1614 (2015). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citations omitted). This allows the officer to ask the driver his destination and purpose, checking the license and registration, or request the driver to step over to the patrol car without violating the Fourth Amendment. *United States v. Linkous,* 285 F.3d 716, 719 (8th Cir. 2002); *see Rodriguez,* 135 S. Ct. at 1615 (the time reasonably required to complete the mission of issuing a traffic ticket can include the time it takes to inspect the driver's license, automobile registration, and proof of automobile insurance; run computer checks; determine whether there are outstanding warrants against the driver; and ask the purpose and itinerary of the trip). A dog sniff is not part of the mission of issuing a traffic ticket. *Rodriguez,* 135 S. Ct. at 1615. Because addressing the

7

infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose.

Unless the government can show an exception to the Fourth Amendment that allows the stop to continue, once the tasks tied to the traffic infraction are—or reasonably should be—completed, the authority for the seizure ends. *See United States v. Englehart*, No. 15-2343, 2016 WL 322705, at *5 (8th Cir. Jan. 27, 2016) (stating that "[i]n the normal course, once the officer finishes the tasks involved with the traffic violation 'the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable, unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention or unless the continued encounter is consensual.'") (quoting *United States v. Quintero–Felix*, 714 F.3d 563, 567 (8th Cir. 2013)). One often invoked exception to the warrant requirement derives from *Terry v. Ohio*, and it permits lengthening a traffic stop if reasonable suspicion of additional criminal activity emerges (or existed in the first place). *See Rodriguez*, 135 S. Ct. at 1614 ("An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. . . . [but] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."); *see United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (noting that if an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband during a traffic stop, he has justification for a greater intrusion unrelated to the traffic offense).

Reasonable suspicion exists if the police officer can point to specific and articulable facts indicating that criminal activity is occurring or is about to occur. *See Terry*, 392 U.S. at 27; *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (stating a "police officer must be able to point to specific and articulable facts which, taken together with rational

8

inferences from those facts, reasonably warrant that intrusion."). The "level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette v. California*, –––U.S. –––, ––––, 134 S. Ct. 1683, 1687 (2014) (citation omitted). The officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27.

The court considers the totality of the circumstances to determine whether police officers have reasonable suspicion to expand the scope of a traffic stop. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). Looking at the totality of the circumstances, a reviewing court must allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Whether a particular detention is reasonable is a fact-intensive question, measured in objective terms. *United States v. Quintero-Felix*, 714 F.3d 563 (8th Cir. 2013). Innocent actions can give rise to reasonable suspicion when considered as part of the totality of the circumstances. *Davison*, 808 F.3d at 329.

"[T]he termination of a traffic stop does not effectively erase the objectively reasonable suspicions developed by a police officer during the traffic stop." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004). Observation of contraband and detection of the odor of a masking agent can create a fair probability that contraband will be found in a vehicle. *United States v. Cortez–Palomino*, 438 F.3d 910, 913 (8th Cir. 2006) (concluding that troopers had probable cause to search defendant's vehicle without a warrant when they observed cellophane packages they recognized as probable contraband and when troopers

detected odor of a masking agent). Inconsistent stories, when combined with other facts, can give rise to reasonable suspicion. *See United States v. Valle Cruz*, 452 F.3d 698, 703 (8th Cir. 2006) (finding "apparently false statements and inconsistent stories," when combined with other factors in the totality of the circumstances, give officers probable cause to search a vehicle).

Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present. *United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011); *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Florida v. Harris*, 133 S. Ct. 1050, 1057 (2013) (stating that "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."). A defendant, however, must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses*. Id.* at 1058. In order to establish the dog's reliability, the law enforcement officers must produce evidence that the dog has been trained and certified to detect drugs. *United States v. Sundby*, 186 F.3d 873, 875–76 (8th Cir. 1999). However, a proponent of the evidence need not "give a detailed account of the dog's track record or education." *Id.* "The test is 'whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.'" *United States v. Jackson*, No. 14-3756, 2016 WL 336203, at *2 (8th Cir. Jan. 28, 2016) (quoting *Harris*, 133 S. Ct. at 1058). In the Eighth Circuit, a certified dog shown to be successful in locating non-

trace quantities of drugs more than 54% of the time has been found reliable. See *Donnelly*, 475 F.3d at 954 (noting that the dog's record is one of many factors to consider, including consistent training, proper certification, an independent evaluation, and the dog's pedigree, history, and behavior, although observing that the dog's performance "was not a model of canine accuracy").

The touchstone of any Fourth Amendment analysis is reasonableness. *United States v. Knights*, 534 U.S. 112, 119 (2001). "A detention may become a de facto arrest if it lasts for an unreasonably long time, but there is no rigid time limit on an investigatory detention." *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005). "There is no bright line rule; instead, 'common sense and ordinary human experience must govern over rigid criteria.'" *United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013) (quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985)). In assessing whether a detention is too long in duration to be justified as an investigative stop, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *Sharpe*, 470 U.S. at 686. "'When police need the assistance of a drug dog in roadside *Terry* stops, it will in general take time to obtain one; local government police forces and the state highway patrol cannot be expected to have drug dogs immediately available to all officers in the field at all times.'" *Maltais*, 403 F.3d at 556-57 (quoting *United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994) (en banc)).

III. DISCUSSION

The court need not address the issue of whether Ms. Quiroga had standing to object to her seizure and the subsequent search of the truck because the court would overrule her objections in any event. The evidence shows that NSP Trooper Henrichs had a reasonable articulable suspicion of criminal activity, based on observations and information gleaned during and after the traffic stop, that provided a reasonable articulable suspicion of criminal activity sufficient to justify a further investigative detention of both defendants.

There is no dispute that there was probable cause for the initial stop of the vehicle. The evidence shows the posted speed limit was 55 m.p.h. and the vehicle was observed and radar clocked at 68 m.p.h. While performing the routine time-consuming tasks related to the traffic violation, the trooper came into possession of knowledge that generated a reasonable suspicion of criminal activity.

The record shows the defendants gave numerous inconsistent and/or evasive responses to the law enforcement officer's queries, during the stop and in the brief conversations that followed. The inconsistencies were not about vague or inconsequential details, but involved important information such as names, familial relationships, and places of residence. Further, the statements were not only inconsistent between the two defendants, the defendants contradicted their earlier statements and their timelines and explanations made no sense. The officer also noticed the defendants' high level of nervousness. Such disagreements and discrepancies on crucial facts would create a reasonable suspicion of criminal activity. In addition, the officer had observed three cell phones in the vehicle, had seen a plastic ammo can sitting on the back floor of the vehicle, and had detected a masking odor. Under the totality of circumstances, these facts create a reasonable articulable suspicion of criminal activity.

The court further agrees that the length of time the defendants were required to await the arrival of the drug dog—-thirty-nine minutes—-did not exceed the reasonable length or scope of a brief, investigative or "Terry" stop. In view of the lateness of the hour and the distances involved, the law enforcement officers' actions cannot be considered dilatory or less than diligent.

Further, the court agrees with the magistrate judge's implicit finding that the dog-sniff was reasonable. The defendants did not rebut the presumption of reliability provided by the drug dog's certification and training. Though the defendants attempted to attack the dog's reliability through cross-examination of Trooper Hicks, they produced no evidence that the training and certification were deficient. No expert testimony was adduced to challenge the NSP's training or certification protocols. The court also agrees that the evidence supports the magistrate judge's finding that the dog alerted to the presence of drugs. Trooper Hick's testimony with respect to the alert is not contradicted in the video recording. Accordingly,

IT IS ORDERED:

1. The defendants' objections ([Filing No. 54](Filing No. 54) and [Filing No. 56](Filing No. 56)) are overruled;

2. The Findings and Recommendation of the United States magistrate judge ([Filing No. 52](Filing No. 52)) is adopted,

3. The defendants' motions to suppress ([Filing No. 25](Filing No. 25) and [Filing No. 27](Filing No. 27)) are denied.

DATED this 22nd day of February, 2016

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge